UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WANDA COX,

    Plaintiff,

v.                                        Case No: 8:13-cv-668-T-36TBM

WORLDPAY US, INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon Defendant Worldpay US Inc.'s ("Worldpay") Motion for Summary Judgment (Doc. 36). Plaintiff Wanda Cox ("Cox") responded in opposition to the motion for summary judgment (Doc. 48), and also filed a Motion to Strike the Document of Rebecca Bernson (Doc. 45), an affidavit submitted by Worldpay in support of its motion for summary judgment. Worldpay replied in further support of its motion for summary judgment (Doc. 54), and responded in opposition to Cox's motion to strike (Doc. 51). The Court, having considered the motions and being fully advised in the premises, will GRANT-IN-PART and DENY-IN-PART Worldpay's Motion for Summary Judgment and DENY Cox's Motion to Strike.

**STATEMENT OF FACTS**[1]

This case arises from Worldpay's termination of Cox in February 2012. Worldpay first hired Cox in August 2005 as an Account Executive, and in March 2010, promoted her to Sales Manager. Doc. 37-2 ("Hunter Aff.") ¶ 12. In April 2011, Steve Trovillo ("Trovillo") was

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, stipulated facts, affidavits, and deposition testimony.

promoted to the Regional Vice President for the Southeast Region, and, as a consequence, became Cox's direct supervisor. Docs. 40-2 ("Trovillo Dep.") at 18-20; 37-3 ("Trovillo Aff.") ¶ 2.

Trovillo and Cox's working relationship was not a good one, to say the least. They repeatedly butted heads over numerous perceived deficiencies in Cox's job performance. For example, Trovillo implemented new reporting requirements for the Sales Managers under his supervision, including the "Daily Field Report" and the "Field Ride Report Card." Doc. 49-1 ("Cox Dep.") at 128, 136. Cox failed to return these to Trovillo in spite of his specific requests to do so because she believed that field rides were unnecessary given her team's sales performance. Doc. 37-1 ("Bernson Aff.") ¶ 12; Trovillo Dep. at 41-43, 51-52. Likewise, Cox refused to follow Worldpay's recruitment procedures, again on the grounds that her team was performing adequately. Bernson Aff. ¶ 12; Trovillo Dep. at 50.

Trovillo and Cox's disagreements culminated in two notable confrontations. The first occurred in July 2011, and related to certain paperwork that Cox had failed to timely submit. On Friday, July 1, Trovillo requested from his team certain paperwork to be sent to him by the end of the day. Cox Dep. at 165-66, Ex. 5 to Cox Dep. at COX 000162. Cox failed to meet that deadline, and on the morning of Sunday, July 3, Trovillo sent her an email criticizing various aspects of her job performance. Cox Dep. 177-78; Ex. 6 to Cox Dep. Cox believed Trovillo's email constituted harassment, and, about ten days later, forwarded to Trovillo's boss a lengthy screed detailing her grievances. *See* Ex. 6 to Cox Dep. at COX 000170-71. The second incident occurred in September 2011 at a sales retreat in Las Vegas, when, during dinner, Trovillo and Cox had a conversation regarding an Account Executive who had recently quit Worldpay. Trovillo Dep. at 64-68; Cox Dep. at 229; Ex. 9 to Cox Dep. at COX 000288. Trovillo relayed to Cox that he heard the Account Executive had left because she didn't want to work for Cox due to Cox's lack of support, and Cox

became upset at what she perceived was a lie, called Trovillo a liar, and stormed out of the dinner. Trovillo Dep. at 64-68; Cox Dep. at 244.

After the Las Vegas incident, on or about October 9, 2011, Cox filed a formal complaint accusing Trovillo of gender discrimination. Ex. 9 to Cox Dep. at COX 000288. The crux of her complaint was that Trovillo had made and continued to make "abusive, unjustified statements" toward her, and that her only unique characteristics were that she was a high performer and a female. *Id.* She ruled out performance as the reason for the alleged harassment because "the #'s speak for themselves," and thus concluded that the alleged harassment may have been gender-related. *Id.* Thereafter, Ricky Stone ("Stone") in human resources conducted an investigation of Cox's claims. Following the investigation, Stone concluded that, although Trovillo may have been abusive and bullying in general, and frustrated with Cox in particular, there wasn't any evidence of gender-based discrimination. Doc. 49-3 ("Stone Dep.") at 23, 53-55, 58-59.

On October 16, 2011, less than a month after Cox filed her complaint, Trovillo issued Cox a performance improvement plan ("PIP") detailing Cox's job performance deficiencies and the steps she would need to take to improve. *See* Ex. 1 to Cox Dep. Cox categorically rejected the PIP and refused to participate in it. Cox Dep. at 70; Ex. 10 to Cox Dep. at COX 000303. Less than a week later, Cox took a leave of absence for health-related reasons, which was subsequently extended for several months. Cox Dep. at 55, 60-61. The day she returned to work in February 2012, she was fired. Trovillo Dep. at 14, 82.

## **MOTION TO STRIKE**

The district court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Further, the district court has the discretion to strike a summary judgment affidavit for a party's failure to comply with the

disclosure requirements of Federal Rule of Civil Procedure 26. *See Faulk v. Volunteers of Am.*, 444 Fed. App'x 316, 317 (11th Cir. 2011); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")

Cox urges the Court to strike the affidavit of Rebecca Bernson ("Bernson") submitted by Worldpay in support of its motion for summary judgment. She argues that Worldpay did not disclose Bernson in its Rule 26(a)(1) initial disclosures and that Worldpay did not list Bernson in response to Cox's interrogatories. *See* Doc. 45 at 1-2. Cox also claims that Worldpay prevented her from deposing Bernson by first delaying and then not agreeing to permit Bernson's deposition to go forward after the discovery cutoff date. *See* Doc. 45 at 4-5.

The Court is not persuaded to strike the Bernson affidavit. To begin with, the Court is not convinced that Worldpay failed to disclose Bernson as required by Rule 26(a)(1). Defendant's Rule 26(a)(1) initial disclosures expressly include "[a]ny individual listed by Plaintiff," and, as Cox has acknowledged, she listed Bernson in her Rule 26(a)(1) initial disclosures. *See* Docs. 45-1; 45 at 7 n.3. Worldpay was thus not required to re-disclose Bernson in its own disclosures.[2] Additionally, as acknowledged by Cox, Worldpay also disclosed Bernson in its EEOC position statement. Docs. 45 at 7 n.4; 51-1 at 7-9.

The Court is also not convinced that Worldpay is primarily responsible for Cox's failure to depose Bernson. It may be true that Cox only learned of Bernson's importance late in the discovery period, and that Worldpay's counsel refused to permit Cox to depose Bernson after the

---

[2] The fact that Cox may have "simply disclosed every person she thought may have been involved in her employment in any way," Doc. 45 at 7 n.3, does not somehow obligate Worldpay to redundantly disclose witnesses.

4

close of discovery. Doc. 45 at 4-5. However, Cox neither subpoenaed Bernson prior to the discovery deadline, nor sought an extension of the discovery deadline for the purpose of deposing Bernson. Cox's failure to invoke any formal process to depose Bernson suggests that Cox's decision to forego Bernson's deposition was a strategic one.

Moreover, Cox's motion appears to be, at least in part, an attempt to circumvent the page limitations set by the Scheduling Order. Indeed, Section II.B of Cox's brief makes arguments wholly unrelated to Cox's motion to strike, and instead sets forth summary judgment arguments going to the alleged pretext of Worldpay's reasons for terminating Cox. *See* Doc. 45 at 8-10. Accordingly, Cox's motion to strike will be DENIED.[3]

Finally, embedded in Worldpay's opposition to Cox's motion to strike is a single-sentence request for monetary sanctions. Doc. 51 at 4. This request, however, is devoid of any supporting authorities and does not list with any specificity the fees and costs requested. If Worldpay believes that it is entitled to sanctions, it must file a separate motion and memorandum of supporting authorities, as required by our Local Rules. Accordingly, Worldpay's request for sanctions is DENIED without prejudice.

## MOTION FOR SUMMARY JUDGMENT

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[3] The Court is concerned with Worldpay's apparent failure to properly identify Bernson in response to Cox's interrogatories and/or to supplement its interrogatory responses as required by Federal Rule of Civil Procedure 26(e). However, the totality of the circumstances does not persuade the Court to impose the requested sanctions at this time.

R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## II. DISCUSSION

### A. Cox's Claim of Gender Discrimination

Cox alleges that Worldpay discriminated against her on the basis of her gender in violation of the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA"). Employment discrimination claims under the FCRA are analyzed under the Title VII framework. *See Wilbur v. Correctional Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004). Under that framework, a plaintiff can establish a *prima facie* case absent direct evidence of unlawful discrimination by demonstrating that: (1) she was a member of a protected class; (2) she was qualified to do the job; (3) she was

subjected to an adverse employment action; and (4) similarly situated employees outside of the protected class were treated differently. *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff establishes a *prima facie* case, a presumption of discrimination is created and the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for its actions." *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). If the defendant identifies such a reason, the presumption of discrimination disappears and the burden again shifts back to the plaintiff to demonstrate that the defendant's reasons are pretextual. *See id.* Ultimately, summary judgment must be denied if the record, viewed in a light most favorable to the plaintiff, presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination . . . ." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks and citation omitted).

The parties do not dispute that Cox is a member of a protected class who was qualified to do her job. And the record unequivocally establishes that she was subject to an adverse employment action.[4] However, Cox has failed to establish her *prima facie* case because she has not satisfied the fourth element—that is, she has not demonstrated that similarly situated male employees were treated differently.

Cox offers several examples purporting to show that Trovillo treated her worse than her male colleagues. Doc. 48 ("Pl. Br.") at 2-3. Her testimony, however, consists largely of vague and conclusory allegations that, aside from her personal feelings of persecution, wholly fail to

---

[4]Worldpay appears to suggest that Cox suffered only performance-related criticism, Doc. 36 ("Def. Br.") at 19, but this ignores the obvious and undisputed fact that Cox was ultimately terminated from her job. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (an adverse employment action includes those "*such as termination*, failure to hire, or demotion") (emphasis added) (quotation marks and citation omitted).

7

evidence gender discrimination. For example, Cox claims that she was not invited to a couple of golf and softball events, Cox Dep. at 153-54, but offers no details that would raise a specter of gender discrimination, such as whether *all* her male colleagues were invited to all such events, and/or whether her exclusion from these events was otherwise arbitrary. Similarly unpersuasive is Cox's unsupported claim that Trovillo told her she could not help her team with administrative tasks while permitting the other sales managers to do so, Cox Dep. at 241-42. *See Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment."). Finally, even if Trovillo were in fact inconsistent in his directives to Cox, Cox Dep. at 33, without any evidence that he treated her male colleagues differently, that fails to evidence gender discrimination.

Cox's references to the July email incident and Las Vegas dinner incident, Pl. Br. at 3, likewise fail to suggest that Trovillo discriminated against her on the basis of her gender. With regard to the July incident, Cox asserts that she was singled out for failing to fill out her reports, but provides no evidence, aside from her personal feelings, that this treatment was in any way discriminatory—indeed, she does not dispute that she failed to timely fill out her reports, and provides no evidence that there were other sales managers who had not filled out their reports but who were not similarly counseled by Trovillo. Cox Dep. at 172-73. And with regard to the Las Vegas incident, Cox's main complaint seems to be that Trovillo "was literally badgering [her] about everything that he could that was negative and not offering any positive," Cox Dep. at 234. But even if Cox were the only female on Trovillo's team at that time, that is insufficient at the summary judgment stage to establish a *prima facie* case of gender discrimination.

8

Finally, Stone's testimony that he believed Trovillo's behavior towards the latter part was gender based, Stone Dep. at 50, is insufficient to establish a *prima facie* case of gender discrimination. This testimony appears to be directed to Cox's claim of retaliation, as according to Stone, Trovillo was determined to terminate Cox's employment. Stone Dep. at 50-51. Stone investigated Cox's internal complaint and "didn't find anything that hinted of gender-based discrimination." Stone Dep. at 59. Further, Stone's belief is supported only on the grounds that Trovillo had not asked him to terminate "any males that had good performance" and that no one else had complained about Trovillo's behavior. Stone Dep. at 52. The fact that Trovillo had not sought the termination of any male employees who were performing well, however, does not reasonably support a conclusion of gender discrimination, and neither Stone nor Cox offers any evidence that the male employees Trovillo did not seek to terminate presented to Trovillo challenges similar to those that Cox indisputably did. And the fact that Stone never received complaints from any of Trovillo's other employees ironically suggests that Trovillo did *not* discriminate against Cox on the basis of gender, as two other female employees worked under Trovillo at the start of his tenure, Cox Dep. at 143-44, but apparently never complained of any disparate treatment by him.

In sum, whether under the *McDonnell-Douglas* framework or not, Cox has failed to present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional [gender] discrimination," *Smith*, 644 F.3d at 1328. Rather, the record at most demonstrates that Trovillo was a critical and demanding manager, and that Cox balked at carrying out many of his directives due to what she perceived as his bullying attitude and her team's superior sales performance. And although the record is rife with instances of personal animosity between the two, it fails to demonstrate, aside from generalized averments to the contrary, that gender was a

9

contributing factor. Accordingly, because Cox has failed to establish a *prima facie* case of gender discrimination, Worldpay is entitled to judgment in its favor as a matter of law. The Court will GRANT Worldpay's motion for summary judgment as to Cox's gender discrimination claim. *Accord Turner v. Fla. Prepaid College Bd.*, 522 Fed. App'x 829, 833 (11th Cir. 2013) (holding that "we have never suggested that a plaintiff's generalized averment that her employer treated her differently than employees of a different race can, alone, create a 'convincing mosaic of circumstantial evidence' from which a jury could find intentional discrimination based on race," and that even if "[defendant] singled [plaintiff] out and treated her poorly . . . [u]nless something links the actions to the employee's race . . . [that] does not permit a jury to infer intentional discrimination based on race.").

## B. Cox's Claim of Retaliation

Cox also brings a claim under the FCRA for unlawful retaliation, arguing that Worldpay terminated her in retaliation for the gender discrimination complaint she filed in September/October 2011. A *prima facie* case of unlawful retaliation requires the plaintiff to show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir.2001)). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Pennington*, 261 F.3d at 1266. If the employer adequately articulates such a reason, the burden then shifts back to the plaintiff to show that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. *See id.*

### 1. Cox's Prima Facie Case

Cox has satisfied her *prima facie* case for unlawful retaliation. Worldpay argues that Cox has not satisfied the first element because her complaint was not objectively reasonable and thus did not constitute protected activity, *see Arafat v. School Bd. Of Broward County*, 549 Fed. App'x 872, 874 (11th Cir. 2013). Def. Br. at 23-24. However, the record shows that although Cox's team consistently met or exceeded her sales quotas, Trovillo nevertheless exhibited a pattern of criticizing her aggressively, including sending her numerous emails early on the Sunday morning of a holiday weekend and critiquing her job performance during a celebratory social event. The record also shows that Cox was the only female employee reporting to Trovillo for at least some of the operative events. When the facts are viewed in the light most favorable to Cox, a reasonable jury could conclude that, despite Stone ultimately finding that there had been no gender discrimination, Cox had a reasonable, good faith belief that the discrimination existed. *See Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) ("the plaintiff need not prove the underlying claim of discrimination").

Likewise, Cox has satisfied the second[5] and third elements of her *prima facie* case. Worldpay argues that Cox has not satisfied the causal connection element because Cox was terminated as a consequence of the July 2011 email incident, which predated her protected gender discrimination complaint. Def. Br. at 24. But while this may be Worldpay's point of view, the record does not indisputably support this contention. Rather, it is undisputed that Cox was placed on a PIP less than a month after filing her gender discrimination complaint, and was

---

[5] As with Cox's gender discrimination claim, the Court finds that Cox's termination qualifies as an adverse employment action.

unceremoniously terminated upon her return from medical leave. The close proximity of her complaint and termination thus give rise to a reasonable inference that there was a causal connection between the two.[6] *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.").

### 2. *Worldpay's Legitimate, Non-retaliatory Reason*

Worldpay has articulated a legitimate, non-retaliatory reason for terminating Cox, *i.e.*, she had performance issues. Indeed, the record is replete with instances of Cox's insubordination and admitted failure to perform the tasks requested of her. *See, e.g.*, Trovillo Dep. at 48-52; Ex. 6 to Cox Dep; Bernson Aff. ¶¶ 10-12. Moreover, as noted by Worldpay, although Cox repeatedly rejects Trovillo's criticisms, she does not deny the perceived deficiencies giving rise to these criticisms, but rather attempts to excuse them. For example, Cox does not deny that she failed to submit documentation to Trovillo on July 1 as requested, but rather attempts to explain her failure to comply due to, *inter alia*, the short deadline and a death in her family. Cox Dep. at 177-78, 191. And Cox does not dispute that she called Trovillo a liar in front of her table at the Las Vegas retreat, but rather claims that she did so in response to his "badgering." Cox Dep. at 234-35, 244. These legitimate justifications for terminating Cox do not suggest retaliation because they occurred *before* she filed her complaint. Accordingly, Worldpay has carried its burden of articulating a legitimate, non-retaliatory reason for terminating Cox.

---

[6] There appears to be a factual dispute over whether Trovillo knew of the complaint, *compare* Trovillo Dep. at 71 with Stone Dep. at 46-49, and who made the decision to terminate Cox, Pl. Br. at 9-11. When the record is viewed in the light most favorable to Cox, however, it supports Cox's argument that Trovillo knew of Cox's complaint and, subsequent to her complaint, recommended her termination, *see* Trovillo Dep. at 83-84.

12

### 3. Cox's Showing of Pretext

Cox has demonstrated that, when the record is viewed in the light most favorable to her, there is a "convincing mosaic of circumstantial evidence" that would allow a reasonable jury to find pretext and retaliatory intent. To begin with, if the July email incident was in fact the reason for her termination, that does not explain why no formal action was taken against her until *October*, shortly after she filed her complaint of gender discrimination. Likewise, although the Las Vegas incident predated Cox's complaint, the record does not support that that was one of the primary reasons for her termination. *See* Bernson Aff. ¶¶ 19-20.

More importantly, Cox was terminated just over a week into her 60-day PIP period without being allowed an opportunity to complete it, in contravention to Worldpay's own policies, Doc 45-4 ("Hunter Dep.") at 23-25. Worldpay argues that it became necessary to terminate Cox immediately upon her return from medical leave due to the "unsolicited" information Trovillo learned while she was on leave.[7] Def. Br. at 14. However, Kolozs' testimony directly contradicts Worldpay's assertion that these complaints arose unsolicited, Doc. 49-7 ("Kolozs Decl.") ¶¶ 7-8, and the record supports that Trovillo had in fact asked Cox's employees to document complaints about her, Trovillo Dep. at 85, and had organized some sort of discussion "regarding leadership and management skills," presumably to solicit complaints about her, Ex. 2 to Trovillo Aff.

---

[7] This information includes, *inter alia*, details surrounding an incident that resulted in a deduction of Karen Kolozs' ("Kolozs") wages; allegations that Cox had been late to interviews and appointments with her Account Executives; allegations that Cox rarely conducted field rides with her Account Executives and frequently canceled plans; allegations that Cox was late to customer meetings; and details surrounding a complaint made by one of WorldPay's partnering banks. Def. Br. at 14-17.

Moreover, many of the complaints that Worldpay claims gave rise to a need for immediate termination were nearly identical to those articulated in Cox's PIP, which Cox was not allowed to complete. *See* Ex. 1 to Cox Dep.; Hunter Dep. at 23-25.

Drawing all reasonable inferences in Cox's favor, a reasonable jury could find that Worldpay did not intend to terminate Cox until she filed her complaint of gender discrimination, and that after she did, Trovillo took advantage of her leave to solicit complaints against her in an effort to create a pretextual reason for her immediate termination. Accordingly, Worldpay's motion for summary judgment as to Cox's retaliation claim will be DENIED, as genuine issues of material fact exist.

## **CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Cox's Motion to Strike the Document of Rebecca Bernson (Doc. 45) is DENIED.

2. Worldpay's request for sanctions, embedded in its opposition to Cox's Motion to Strike (Doc. 51), is DENIED without prejudice.

3. Defendant's Motion for Summary Judgment (Doc. 36) is GRANTED as to Cox's claim for gender discrimination and DENIED as to Cox's claim for retaliation.

**DONE AND ORDERED** in Tampa, Florida on September 8, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record